IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHELE BELANGER,                          Case No. 6:07-cv-01727-AA
                                               OPINION AND ORDER
            Plaintiff,

       v.

CAROLYN W. COLVIN,
Commissioner of Social
Security,

            Defendant.
_____

Tim D. Wilborn
Wilborn Law Office, P.C.
P.O. Box 370578
Las Vegas, Nevada 89137
     Attorney for plaintiff

S. Amanda Marshall
United States Attorney
Adrian L. Brown
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201

Richard A. Morris
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, Washington 98104
     Attorneys for defendant

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff Michele Belanger brings this action pursuant to the Social Security Act ("Act") to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Title XVI supplemental security income ("SSI") under the Act.   For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

### PROCEDURAL BACKGROUND

This case has a long and complicated procedural history.[1] Plaintiff applied for SSI on December 15, 1998. Tr. 74, 154, 2467. The application was denied initially and upon reconsideration.  Tr. 46, 2467.  After a hearing, the Administrative Law Judge ("ALJ") issued a decision, on March 31, 2001, finding plaintiff not disabled within the meaning of the Act.  Tr. 910-21, 1397-1442, 2467.   The Appeals Council accepted review and remanded the case for further proceedings.  Tr. 933-35, 2467.  On January 28, 2005, after a second administrative hearing, the ALJ issued another unfavorable decision.  Tr. 16-25, 1369-96, 2467.  After the Appeals Council declined jurisdiction over the ALJ's 2005 decision, plaintiff filed a complaint in this Court.  Tr. 2468.

On October 1, 2008, the Court reversed and remanded the ALJ's decision, pursuant to sentence six of 42 U.S.C. § 405(g), based on

---

[1] The record before the Court constitutes over 2,600 pages, but with some incidences of duplication.  Where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears.

the existence of new and material evidence.    Tr. 1476-77, 2468.
Accordingly, on June 22, 2009, the Appeals Council vacated the
ALJ's 2005 decision and remanded this case for further proceedings.
Tr. 1478-80, 2468.

On April 29, 2010, a third ALJ hearing was held, wherein
plaintiff was represented by counsel and testified, as did a
vocational expert ("VE").  Tr. 2421-58, 2468.  On May 19, 2010, the
ALJ issued a third decision finding plaintiff not disabled.    Tr.
1456-75, 2468.  The Appeals Council initially declined jurisdiction
after plaintiff filed exceptions; however, upon further review, the
Appeals Council issued a remand order, for additional proceedings,
to ensure that the ALJ considered additional evidence submitted at
the April 2010 hearing.  Tr. 1445-55, 2468, 2590-94.  On August 20,
2012, a fourth hearing was held, where plaintiff was once again
represented by counsel and testified.  Tr. 2621-38.  On September
21, 2012, the ALJ issued a fourth decision finding plaintiff not
disabled under the Act.  Tr. 2464-89.  On May 28, 2013, after the
Appeals Council denied review of the ALJ's 2012 decision, this
Court granted the parties' stipulated motion to reopen plaintiff's
appeal.

**STATEMENT OF FACTS**

Born on August 14, 1957, plaintiff was 41 years old on the
alleged onset date of disability and 55 years old at the time of
the 2012 hearing.  Tr. 54.  Plaintiff graduated from high school
and thereafter served in the navy for approximately four years; she
also attended some college courses.  Tr. 1400, 2130-31.  She

Page 3 - OPINION AND ORDER

previously worked as a receptionist, medical clerk, media clerk, administrative assistant, and teacher's assistant.    Tr. 2451. Plaintiff alleges disability as of December 15, 1998, due to fibromyalgia, obesity, depression, and costochontritis.[2]    Tr. 74; see also Pl.'s Opening Br. 2.

### STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record.    Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).    Substantial evidence is "more than a mere scintilla.    It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).    The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).    Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational.    See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability.    Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986).    To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

---

[2] "Costochontritis is a condition in which the muscles and bones of the chest become irritated and sore." Tr. 2514. It is a benign and often temporary impairment.    Id.

can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. § 416.920(b). If so, the claimant is not disabled.

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 416.920(c). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 416.920(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 416.920(e). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the

national and local economy. <u>Yuckert</u>, 482 U.S. at 141-42; 20 C.F.R. § 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.966.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since the application date. Tr. 2470. At step two, the ALJ determined that plaintiff had the following severe impairments: "fibromyalgia/myofascial pain syndrome; pain disorder; depressive disorder; obesity; and costochondritis." <u>Id.</u> At step three, the ALJ found that plaintiff's impairments did not meet or equal the requirements of a listed impairment. Tr. 2473.

Because she did not establish disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform a "modified range of sedentary work," as defined by 20 C.F.R. § 416.967(a):

> [s]he can sit six hours in an eight-hour day; stand two hours in an eight-hour day; lift and carry up to five pounds; no reaching overhead; only walk slowly and deliberately on even surfaces; because of pain and deficits in concentration, [plaintiff] should not perform skilled or complex work and is limited to semi-skilled and unskilled work.

Tr. 2474-75.

At step four, the ALJ found that plaintiff was "capable of performing past relevant work as a receptionist . . . as it is actually and generally performed." Tr. 2488. Accordingly, the ALJ concluded that plaintiff was not disabled under the Act. <u>Id.</u>

Page 6 - OPINION AND ORDER

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) improperly assessing the lay witness statements of Gail Banbury, Valerie Harnell, Connie Williams, Inge Johnson, Brenda Jackson, Tonya Eng, Jean Owens, Lorri Schinderle, Michelle Holmes, and Mike Nelson; (2) discrediting opinion evidence from Kip Kemple, M.D., Daniel Hanson, M.D., Melanie Doak, M.D., and Davit Hitt, a vocational rehabilitation consultant; and (3) failing to include all of her limitations in the RFC, thereby rendering the VE's testimony and the ALJ's step four finding invalid.

I.   Lay Witness Testimony

Plaintiff asserts that the ALJ failed to articulate a germane reason to reject "[t]he statements of Plaintiff's ten witnesses." Pl.'s Opening Br. 19.   Lay testimony regarding a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (citation omitted). The ALJ must provide "reasons germane to each witness" in order to reject such testimony.   Id. (citation and internal quotation omitted).   In rejecting lay statements, however, the ALJ need not "discuss every witness's testimony on a individualized, witness-by-witness basis . . . if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness."   Id. (citations omitted).

The ten lay witnesses mentioned above each provided a brief written statement concerning plaintiff. Specifically, in February 1999, Ms. Banbury completed a Third-Party Adult Function Report, in which she indicated that plaintiff goes shopping, dines out, visits friends, drives, watches television, walks on her treadmill, plays cards, prepares meals, performs laundry and vacuuming, reads, and is independent in her self-care, although she "[c]onstantly complains about pains in arms, knees and joints . . . [and] about not being able to do physical activities because of pain [and] [o]ccasional memory loss." Tr. 88-96. The ALJ afforded Ms. Banbury's statements "some weight" because they were "consistent with the capacity for sedentary work." Tr. 2486. As such, the ALJ did not reject Ms. Banbury's lay testimony and instead fashioned a RFC consistent therewith. Compare Tr. 88-96 (Ms. Banbury's testimony), with Tr. 2474-75 (RFC limiting plaintiff to standing two hours and sitting six hours in an eight-hour workday, with lifting/carrying no more than five pounds, no overhead reaching, slow walking on even surfaces, and no skilled or complex tasks).

In February 2002, Ms. Harnell contributed another Third-Party Adult Function Report, in which she recorded that plaintiff goes shopping, visits with friends and relatives, drives, watches television or movies, plays cards, uses the internet, performs art and crafts projects, prepares easy meals for herself and her children, does laundry, reads, and is independent in her self-care. Tr. 2082-93. Nevertheless, Ms. Harnell opined that "slowed concentration, range of motion limited, nausea, pain, [and] vision

problems" would interfere with plaintiff's ability to work on a regular basis. Tr. 2092. The ALJ did not discuss or otherwise acknowledge Ms. Harnell's third-party statements. See Tr. 2467-89. Nonetheless, Ms. Harnell endorses activities and limitations similar to those described by Ms. Banbury, and the ALJ accepted Ms. Banbury's statements and accounted for them in the RFC. Tr. 2474-75, 2486. Because the ALJ's RFC is compatible with both Ms. Banbury's and Ms. Harnell's third-party statements, any error in failing to address Ms. Harnell's testimony was harmless. See Molina, 674 F.3d at 1114-22 (outlining the harmless error standard).

In July 2003, Ms. Williams, an education administrator, testified that letters plaintiff wrote excusing her daughter's absences from school exhibited poor handwriting, which plaintiff explained was due to the fact she wrote them left handed because "of her fibromyalgia and weakness in her right arm." Tr. 958. The ALJ rejected Ms. Williams' opinion because it "was based on the subjective statements by the claimant and other examples of her handwriting in the record are certainly legible." Tr. 2486. An ALJ need not accept opinion evidence that is based on the claimant's discredited statements. Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). Here, the record supports the ALJ's conclusion; Ms. Williams' letter is plainly based on plaintiff's self-reports, which the ALJ found lacked credibility and plaintiff

does not now challenge that finding.[3]  Further, other evidence of record evinces that plaintiff did not struggle with her handwriting to the extent indicated by Ms. Williams.  See, e.g., Tr. 73-82, 678, 2094-97, 2100 (legibly completed handwritten notes and forms from plaintiff); see also Tr. 1133 (plaintiff "was observed to regularly take notes" throughout 14 group counseling sessions).

In July and August 2004, Ms. Johnson, Ms. Jackson, Ms. Eng, and Ms. Owens submitted letters on behalf of plaintiff's disability claim.  Tr. 27, 978-80.  These third-party statements reflect plaintiff's reports of weakness, pain, and fatigue.  Id.  Ms. Johnson, Ms. Jackson, Ms. Eng, and Ms. Owens also reported observing plaintiff frequently lying down or taking naps.  Id.  In March and April 2012, Ms. Schinderle, Ms. Holmes, and Mr. Nelson likewise furnished letters.  Tr. 2568-70.  Although Ms. Schinderle, Ms. Holmes, and Mr. Nelson never noticed plaintiff in their

---

[3] Plaintiff does argue, however, that the ALJ erroneously relied on her activities of daily living to discredit the medical opinion evidence and lay statements.  See Pl.'s Opening Br. 17, 19.  Here, the ALJ's credibility determination was based on a variety of reasons, including plaintiff's activities of daily living, inconsistent statements, performance of work after the alleged onset date, departure from a job for reasons unrelated to her alleged disability, secondary gain-seeking behavior, and non-compliance with treatment.  Tr. 2476-2481.  Because plaintiff does not challenge this finding generally, the issue of whether the ALJ erroneously rejected other evidence because it was based on plaintiff's discredited self-reports is not properly before the Court.  See Greenwood v. F.A.A., 28 F.3d 971, 977 (9th Cir. 1994) (court only considers those "issues which are argued specifically and distinctly in a party's opening brief").  In any event, while some evidence concerning plaintiff's daily activities may be interpreted more favorably to her, the ALJ's decision regarding this issue is nonetheless supported by the record as a whole and therefore must be affirmed.  Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1198 (9th Cir. 2004).

apartment building's workout room, they had seen her taking her pets out on short walks. Id. Ms. Schinderle, Ms. Holmes, and Mr. Nelson were "aware of [plaintiff's] pain problems and the difficulties she has." Tr. 2569; see also Tr. 2568, 2570.

The ALJ credited these lay statements "to the extent that they are consistent" with the record, including the objective medical evidence and evidence of plaintiff's activities of daily living. Tr. 2486-87. Additionally, the ALJ found that plaintiff's fatigue related to sleeplessness had improved and her "failure to appear in the building's exercise room does not negate the substantial activities described elsewhere in this opinion." Id. Inconsistency with or lack of corroboration by the medical record is a germane reason to discredit third-party statements. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); Glover v. Astrue, 835 F.Supp.2d 1003, 1012-14 (D.Or. 2011).

To the extent the ALJ discredited evidence from Ms. Johnson, Ms. Jackson, Ms. Eng, Ms. Owens, Ms. Schinderle, Ms. Holmes, and Mr. Nelson as being contrary to the objective medical record, substantial evidence supports the ALJ's conclusion. See, e.g., Tr. 668-71, 682-84, 686-87, 700-01, 900-01, 1017-18, 1028, 1170-76, 1213-17, 1327, 1621-25, 1776, 1816 (extensive imaging studies, in the form of MRIs, x-rays, and CTs, of plaintiff's back, hips, hands, ankle, wrists, legs, and shoulder, revealing results that are unremarkable or largely within the normal range for her age); see also Tr. 2470-71, 2478, 2484-85 (ALJ summarizing plaintiff's relatively normal objective findings, other than those relating to

Page 11 - OPINION AND ORDER

fibromyalgia). Additionally, the ALJ is correct that the record demonstrates plaintiff's fatigue-related symptoms have improved, such that these third-party statements no longer accurately depict her functioning. Namely, at the 2010 hearing, plaintiff explained that she "finally overcame" her depression. Tr. 2442. She testified further that her "sleep has improved greatly," to between six and eight hours a night, such that she no longer "naps in the afternoon anymore." Tr. 2445.

In sum, with the exception of Ms. Harnell, the ALJ individually summarized and weighed each third-party statement and, where this evidence was rejected, the ALJ provided at least one reason germane to each witness for doing so. Tr. 2486-87. Even assuming, however, that the ALJ erred in assessing the third-party statements, such error was harmless. Molina, 674 F.3d at 1122 (ALJ's failure to provide a germane reason to reject "lay witness testimony is harmless where the same evidence that the ALJ referred to in discrediting the claimant's claims also discredits the lay witness's claims") (citation and internal quotations omitted). The testimony from Ms. Banbury, Ms. Harnell, Ms. Williams, Ms. Johnson, Ms. Jackson, Ms. Eng. Ms. Owens, Ms. Schinderle, Ms. Holmes, and Mr. Nelson concerning plaintiff's fatigue- and pain-related functional limitations is nearly identical to plaintiff's. Compare Tr. 1372-82, 1400-18, 2434-50, 2625-38 (plaintiff's hearing testimony), with Tr. 27, 88-96, 958, 978-80, 2082-93, 2568-70 (third-party statements). The ALJ provided several clear and convincing reasons to reject plaintiff's subjective symptom

statements that are equally applicable to the lay testimony. For example, plaintiff's activities of daily living, secondary-gain seeking behavior, and performance of paid work after the alleged onset date erode the credibility of both her and the lay witnesses' statements. See Tr. 2477-87; see also Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009). Thus, the ALJ's evaluation of the lay witness testimony is affirmed.

## II. Opinion Evidence

Plaintiff also contends that the ALJ neglected to provide legally sufficient reasons, supported by substantial evidence, to reject the opinions of Mr. Hitt and Drs. Kemple, Hanson, and Doak.[4]

### A.    Non-Acceptable Medical Source Evidence

While only "acceptable medical sources" can diagnose and establish that a medical impairment exists, evidence from "other sources" can be used to determine the severity of that impairment and how it affects the claimant's ability to work. 20 C.F.R. § 416.913(a), (d). "Other sources" include, in relevant part,

---

[4] In the alternative, plaintiff argues that the ALJ should have developed the record further in regard to Mr. Hitt's and Mr. Hanson's opinions. The claimant bears the burden of proving the existence of an impairment, such that the ALJ's limited "duty to further develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001). Neither the ALJ nor any medical source found the extensive record in the case at bar to be ambiguous or insufficient for proper evaluation. Furthermore, plaintiff does not identify how additional information gleaned from recontacting Mr. Hitt and Dr. Hanson could or would have impacted her claim. See generally Pl.'s Opening Br.; Pl's Reply Br.; see also McLeod v. Astrue, 640 F.3d 881, 887-88 (9th Cir. 2011) (party seeking reversal bears the burden of establishing harmful error). Under these circumstances, the ALJ's duty to more fully develop the record was not triggered.

counselors.  20 C.F.R. § 416.913(d); SSR 06-03p, available at 2006
WL 2329939.  As noted above, to disregard the opinion of an other,
or lay, source, the ALJ need only provide a reason that is germane
to that witness.  Turner v. Comm'r of Soc. Sec., 613 F.3d 1217,
1223-24 (9th Cir. 2010).

In May 2005, plaintiff attended a one-time functional capacity
evaluation with Mr. Hitt.  Tr. 2496-98, 2503-13.  The examination
consisted of a number of vocational tests; however, neither the
tasks themselves nor plaintiff's results are explained within the
report.  Id.  These tests revealed that plaintiff "met the minimum
aptitude profile . . . for only 2 of the 66 occupational groups on
the O*Net Ability Profiler."  Tr. 2497.  Nevertheless, Mr. Hitt
opined that he saw "no medical evidence that [plaintiff] could
sustain function in such jobs."  Id.  In relaying his "Interim
Conclusions," Mr. Hitt noted that plaintiff has "a significant load
to bear" due to her "two special needs children," such that he
questioned "[w]hat else could she take on that would not interfere
with the meeting of their needs?"  Tr. 2498.  He also recommended
further evaluation of plaintiff's physical and psychological
impairments, in part because he found "little of substance written
out in her medical records explaining just why she cannot work."
Id.

In discussing these findings, the ALJ accurately observed that
Mr. Hitt assessed plaintiff with "average math skills" and good
"form perception, vocabulary, and clerical perception," such that
she retained the ability to "perform two of the 66 jobs listed on

Page 14 - OPINION AND ORDER

the O*Net Ability Profiler." Tr. 2487-88.  The ALJ also listed two
reasons for affording "little weight" to Mr. Hitt's opinion.  Id.
First, the ALJ denoted that Mr. Hitt "is not an acceptable medical
source" and "lacks medical training, yet he makes several medical
conclusions."  Tr. 2488.  Second, the ALJ found that Mr. Hitt's
"statements are not objective and impartial, and he appears to be
acting as [plaintiff's] advocate instead of someone who evaluates
her job skills," as indicated by the fact that he "describes
[plaintiff's] 'heavy load'" and her "two special needs children."
Id.

Initially, contrary to plaintiff's assertion, the objective
test results from Mr. Hitt's evaluation are not alone indicative of
disability.  Indeed, the objective tests administered by Mr. Hitt
confirmed that plaintiff was capable of performing jobs within two
distinct occupational clusters, despite obtaining "extremely low"
scores on manual dexterity tasks.  Tr. 2497.  Further, to the
extent plaintiff contends that her low manual dexterity scores
should have been accounted for in the RFC, her argument is not
persuasive.  An ALJ can disregard a medical report that does "not
show how [a claimant's] symptoms translate into specific functional
deficits which preclude work activity."  Morgan v. Comm'r of Soc.
Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  The Court finds
that, by extension, the ALJ did not err by failing to account for

plaintiff's manual dexterity tests because Mr. Hitt neglected to convert these results into work-place restrictions.[5]

In any event, the record demonstrates that, based on his lay consideration of the medical evidence, Mr. Hitt concluded that plaintiff could not sustain function over the jobs identified in the O*Net Ability Profiler.  Tr. 2497.  The Court finds that Mr. Hitt's lack of medical training is a germane reason to discredit his medically-based conclusion regarding sustained function, especially in light of the fact that Mr. Hitt may not have had access to a complete and accurate medical history.  See Tr. 2496-97.  Lastly, while an ALJ's decision to afford less weight to a non-acceptable medical source statement due to the appearance of bias is generally disfavored, the ALJ may nonetheless reject such an opinion where, as here, there is some evidence implicating a lack of objectivity or improper advocacy.  See, e.g., Ask v. Astrue, 2010 WL 1327063, *9 (D.Idaho Mar. 29, 2010); Fentress v. Colvin, 2014 WL 1116780, *4 (W.D.Wash. Mar. 20, 2014).

---

[5] The ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC.  See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008).  As such, the ALJ summarized and weighed approximately fourteen years worth of medical records to formulate plaintiff's RFC.  Pursuant to this task, the ALJ acknowledged other evidence indicating that plaintiff retains manual dexterity skills in excess of what was evaluated by Mr. Hitt.  Tr. 2480, 2485.  For instance, a subsequent vocational evaluation "reflect[ed] good hand/eye coordination and fine motor dexterity skills," with plaintiff reporting "[n]o increased physical discomfort . . . from grasping and fingering small objects for a short period of time."  Tr. 1447-48, 2487.  Furthermore, plaintiff engaged in a slate of arts and crafts projects during the relevant time period, including refinishing furniture, sewing, and quilting, all of which entailed detailed use of her hands.  Tr. 2474, 2477.

Page 16 - OPINION AND ORDER

Accordingly, the ALJ's decision is affirmed as to Mr. Hitt's opinion.

B.    Acceptable Medical Source Evidence

There are three types of medical opinions in social security cases: those from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  In considering medical evidence, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001).  More weight is afforded to "opinions that are explained than to those that are not, . . . and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." Id. (citations omitted).  To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons for doing so. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing Lester, 81 F.3d at 830-31).  If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. Id.

i.    Dr. Kemple

In September 2005, Dr. Kemple produced a report in which he summarized his one-time assessment of plaintiff's "chronic musculoskeletal problems." Tr. 2544-45.  Dr. Kemple diagnosed plaintiff with "Chronic Arthralgia-Myalgia Syndrome (onset 3/98)," listing fibromyalgia and pain in the neck, shoulder, hand, low

back, hip, and knee as a subset of this diagnosis. Tr. 2544. The doctor then reiterated plaintiff's subjective statements regarding her pain issues, which depicted her as being severely limited in her physical functioning and having to spend several days in bed even after low-impact activities, and "also reviewed [a] large stack of medical records provided from [the] VA clinic." Id. Dr. Kemple concluded that plaintiff's "relatively chronic and progressive degenerative problems," which "probably" include "chronic tendinitis and arthritis in her right shoulder" and are "confounded by a chronic musculoskeletal pain compatible with fibromyalgia," limit her activities such that "it is unlikely that she could be working on any regular basis." Tr. 2545. Dr. Kemple noted, however, that "current x-rays of her right shoulder, neck, and low back would clarify several of the problems noted above." Id.

The ALJ gave "little weight" to "Dr. Kemple's opinion that [plaintiff] would be unable to work." Tr. 2484. The ALJ set forth three reasons in support of this determination: (1) Dr. Kemple saw plaintiff "only one time, and his opinion is not consistent with the objective medical evidence"; (2) "his analysis took place three months after [plaintiff] placed significant pressure on Dr. DiCarlo to make a statement about the impact of fibromyalgia on her disability claim"; and (3) "a series of MRIs, x-rays, and CT scans [from 2009] show[ed] only mild degeneration of the lumbar and cervical spine; normal condition of the lower extremities; left shoulder degeneration without interval changes; and no

abnormalities in the hips." Tr. 2484-85; see also Tr. 1621-25 (2009 imaging studies).

An ALJ may reject a contradicted medical report "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 753 (9th Cir. 1989). That is precisely what transpired in the case at bar. The ALJ summarized, weighed, and made findings regarding opinion evidence from two vocational counselors, a mental health nurse practitioner, four state agency consulting doctors, and seven treating or examining doctors, including Dr. Kemple. Tr. 2475-88. The ALJ also examined and interpreted plaintiff's objective clinical findings, as well as MRIs, x-rays, and CTs. Tr. 2470-71, 2475-88. Based on this evidence, including more recent and relatively benign imaging studies,[6] in conjunction with plaintiff's gain-seeking behavior and the fact that Dr. Kemple saw plaintiff only once, the ALJ afforded less weight to Dr. Kemple's conclusory report. The fact that plaintiff disagrees with the ALJ's rational interpretation of the record is an insufficient basis to overturn that decision. See Burch, 400 F.3d at 679. As such, the ALJ

---

[6] To the extent plaintiff asserts that the ALJ's reliance on subsequent imaging studies "is misplaced" because "fibromyalgia doesn't show on x-rays or MRI scans," her argument is unavailing. Pl.'s Opening Br. 18. Dr. Kemple's opinion that plaintiff is disabled was not based on her diagnosis of fibromyalgia, but rather on her "progressive degenerative problems," which are, in fact, apparent on imaging studies. Tr. 2545. As a result, the doctor himself recognized that obtaining up-to-date x-rays "would clarify several of the problems noted above." Id.

Page 19 - OPINION AND ORDER

provided a legally sufficient reason, supported by substantial evidence, for discrediting Dr. Kemple's opinion.

        ii. <u>Dr. Hanson</u>

In May 2009, plaintiff established care with Dr. Hanson for management of her pain complaints and other periodic conditions. Tr. 1842, 1853-57. In December 2009, Dr. Hanson completed a disability form prepared by plaintiff's counsel. Tr. 1527-30, 1653. Dr. Hanson listed "myofascial pain syndrome, osteoarthritis, and degenerative disc disease" as plaintiff's diagnoses. Tr. 1527. The doctor indicated that plaintiff could not lift or carry ten pounds, even occasionally; could stand and/or walk, and sit, for less than two hours total in an eight-hour workday and for no more than fifteen to twenty minutes at a time; could not push/pull, reach overhead, work at bench level, kneel, crawl, crouch, climb, or perform manual gross/fine dexterity "even for a few minutes." Tr. 1528-29. In addition, Dr. Hanson stated that plaintiff "must rest for a few minutes after 15-20 minutes of any activity, including sitting," although she could "maintain concentration and attend to tasks, but can perform light tasks only 15-20 minutes at a time." Tr. 1529. In response to the question "[a]s of what date have these limitation been present," Dr. Hanson responded November 1, 1998. Tr. 1530.

The ALJ discredited Dr. Hanson's December 2009 report: "[a]lthough Dr. Hanson is [plaintiff's] treating physician, his opinion is not given controlling weight because it is inconsistent with the record as a whole and appears to be based on [plaintiff's]

subjective reporting of pain." Tr. 2482. A medical opinion "premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded, once those complaints have themselves been properly discounted." <u>Andrews</u>, 53 F.3d at 1043.

Here, a review of Dr. Hanson's chart notes confirms that his December 2009 opinion was based on plaintiff's uncredible self-reports. Dr. Hanson stated that his treatment of plaintiff entailed "having her come to the clinic on a regular[ly] scheduled basis to hear about her [symptoms], to try to reassure her, and to make sure that nothing of significance pops up." Tr. 1654; <u>see also</u> Tr. 1708-15, 1736-42, 1800-04. As such, Dr. Hanson did not independently assess plaintiff's functional limitations. Further, Dr. Hanson documented plaintiff's unremarkable objective tests and evaluations, and noted that, "[d]espite [plaintiff's pain complaints, she] continues to do (and enjoys doing) many activities around the house." Tr. 1843; <u>see also</u> Tr. 1654, 1816.

The only other evidence in Dr. Hanson's chart notes pertaining to plaintiff's functioning is a November 2009 pain consultation report, which Dr. Hanson ordered because plaintiff had repeatedly asked him to complete disability paperwork on her behalf. <u>See, e.g.</u>, Tr. 1653-60, 1754, 1800. The pain clinic examiner documented plaintiff's subjective complaints and performed a physical evaluation, which yielded results within the normal range; although the examiner reported that it was "not possible for me to determine her primary problem," he recommended that plaintiff lose weight and

Page 21 - OPINION AND ORDER

increase her activity due to her obesity and deconditioning.   Tr. 1653-60.

In sum, there is nothing in Dr. Hanson's chart notes supporting the degree of limitation endorsed in his December 2009 opinion.   Indeed, Dr. Hanson's functional restrictions closely mirror plaintiff's discredited subjective symptom statements. <u>See, e.g.,</u> Tr. 2438-40, 2442-44.   For instance, Dr. Hanson recounted that plaintiff's impairments existed as of 1998, despite the fact that he did not begin treating her until over ten years thereafter. The ALJ's finding, that Dr. Hanson's report was not entitled to controlling weight because it was based on plaintiff's uncredible subjective symptom statements, was reasonable and is therefore upheld.

iii. <u>Dr. Doak</u>

In 2011, plaintiff began treatment with Dr. Doak.   Tr. 2625. The record does not contain any of Dr. Doak's chart notes; however, the doctor filled out a questionnaire from plaintiff's counsel in July 2012.   Tr. 2615-20.   Dr. Doak outlined "chronic pain due to combination of myofascial pain and osteoarthritis," costochontritis, depression and anxiety, allergic rhinitis, and insomnia as plaintiff's diagnoses.   Tr. 2625.   The doctor indicated that plaintiff could not lift or carry ten pounds, even occasionally; could stand and/or walk for less than two hours total in an eight-hour workday and for no more than five to twenty minutes at a time; must alternate between sitting, standing, and walking every five to ten minutes; and would not be able to sustain

Page 22 - OPINION AND ORDER

concentration, persistence, and pace or perform simple, repetitive, routine tasks for eight hours a day, five days per week.  Tr. 2616-18.  While Dr. Doak endorsed "[n]o significant inability" to "[u]nderstand, remember and follow simple instructions and work-like procedures," and to "[w]ork without special supervision, ask appropriate questions and receive appropriate criticism," she reported that plaintiff's "physical impairments make this somewhat irrelevant when considering whether she can perform such procedures."  Tr. 2618-19.

Dr. Doak stated, however, that she "cannot assess" limitations associated with "upper extremity pushing/pulling, reaching overhead and working at bench level," "manual functioning, gross and fine," and "kneeling, crawling, crouching and climbing," and "recommend[ed] [a] formal functional capacity evaluation not performed by VA" to determine plaintiff's physical capabilities. Tr. 2617.  Dr. Doak explained that these limitations have "been apparent" since January 2011, but opined further that plaintiff "has been unable to work for some time as documented by other records (physical capacity eval, Dr. Kip Kemple)."  Tr. 2620. Finally, the doctor found plaintiff to be "very credible."  Id.

The ALJ afforded Dr. Doak's analysis "little weight" because "her opinion is contradictory."  Tr. 2484.  Specifically, the ALJ denoted Dr. Doak:

> gives limitations on standing, walking, and lifting, but she defers on postural and upper extremity limitations because she does not want to provide a functional capacity evaluation.  Dr. Doak says [plaintiff] has no problem with simple tasks, yet she indicates that

[plaintiff's] physical concerns – which she did not fully evaluate – preclude her from performing work.

Id.  The ALJ also found that, although Dr. Doak stated plaintiff was credible, her opinion did "not address the credibility concerns discussed elsewhere in this opinion."  Id.

As discussed throughout, an ALJ need not accept a medical opinion that is based on the claimant's uncredible self-reports. Andrews, 53 F.3d at 1043.  Further, an ALJ may discount a medical report if it is internally inconsistent.  See Morgan, 169 F.3d at 603.  Here, the ALJ is correct that Dr. Doak's opinion regarding plaintiff's functional deficits, which allegedly preclude work activity, is irreconcilable.  Dr. Doak does not articulate any basis for her conclusions, including her own chart notes or clinical findings, other than a passing reference to Dr. Kemple's report.  As such, Dr. Doak's statement that she "cannot assess" certain limitations, while at the same time signifying that plaintiff is functionally restricted in other areas, indicates that her report is premised largely on plaintiff's discredited testimony.

In other words, because Dr. Doak did not perform a formal functional capacity evaluation, the only information upon which her limitations relating to standing, walking, and sitting could be based is plaintiff's own descriptions of her impairments or other evidence of record; yet it is unclear from her report whether or to what extent she reviewed plaintiff's longitudinal medical history pursuant to her assessment.  Regardless, like Dr. Hanson, the limitations identified by Dr. Doak parrot plaintiff's subjective

Page 24 - OPINION AND ORDER

symptom statements, resulting in an internally inconsistent report. Accordingly, the ALJ provided a legally sufficient reason, supported by substantial evidence, for rejecting Dr. Doak's opinion. The ALJ's evaluation of the opinion evidence is affirmed.

III. <u>RFC Assessment and Step Four Finding</u>

Finally, plaintiff argues that the ALJ's RFC and, by extension, his step four finding are erroneous because they do not account for limitations described by Mr. Hitt, Dr. Hanson, Dr. Doak, Dr. Kemple, Ms. Banbury, Ms. Harnell, Ms. Williams, Ms. Johnson, Ms. Jackson, Ms. Eng. Ms. Owens, Ms. Schinderle, Ms. Holmes, and Mr. Nelson.

The RFC is the maximum that a claimant can do despite her limitations. <u>See</u> 20 C.F.R. § 416.945. In determining the RFC, the ALJ must consider restrictions imposed by all of a claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p, <u>available at</u> 1996 WL 374184. Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

As discussed above, the ALJ properly discredited the opinions of Mr. Hitt and Drs. Hanson, Doak, and Kemple. In addition, to the extent limitations described therein were not incorporated into the RFC, the ALJ articulated germane reasons for rejecting the lay witness statements. Accordingly, plaintiff's argument, which is

Page 25 - OPINION AND ORDER

contingent upon a finding of harmful error in regard to the aforementioned issues, is without merit. <u>Bayliss</u>, 427 F.3d at 1217-18; <u>Stubbs-Danielson</u>, 539 F.3d at 1175-76.

**CONCLUSION**

For the foregoing reasons, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

Dated this _____ day of April 2014.


_____
Ann Aiken
United States District Judge

Page 26 - OPINION AND ORDER